UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANIBAL GONZALEZ, a/k/a RAFAEL MARTINEZ-LIZ,

                  *Defendant*,

– against –

UNITED STATES OF AMERICA,

                  *Respondent*.

**OPINION & ORDER**

16 Civ. 3481 (ER)

13 Cr. 823 (ER)

Ramos, D.J.:

      Anibal Gonzalez, also known as Rafael Martinez or Rafael Martinez-Liz ("Gonzalez") pled guilty on May 15, 2015 to one count of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 and one count of possessing a firearm during that conspiracy in violation of 18 U.S.C. § 924(c). Pending before the Court is Gonzalez' motion to vacate his sentence, pursuant to 28 U.S.C. § 2255, in light of developments in the law since 2015, which render conspiracy to commit Hobbs Act robbery no longer a valid predicate crime of violence to sustain a § 924(c) charge. For the reasons below, Gonzalez' motion is DENIED.

## I.    BACKGROUND

      In July 2013, at the direction of law enforcement, a cooperating witness approached Jose Arias ("Arias") with an opportunity to rob drug dealers transporting large quantities of cocaine and heroin from Miami to New York. Presentence Report ("PSR") ¶¶ 16-17, Doc. 92. In fact, the robbery was a reverse sting set up by law enforcement. *Id.* ¶ 15. Arias responded affirmatively that he had a team, with weapons, who would carry out the robbery. *Id.* ¶ 17. On or about October 4, 2013, Gonzalez met with Arias and one other co-conspirator to make plans for the robbery and discuss what weapons they would bring. *Id.* ¶ 21. On the night of October 8, 2013, Gonzalez, Arias, and two

other co-conspirators traveled by car to a location in Manhattan indicated by the cooperating witness, who had informed them that the drug dealers would be arriving with 33 kilograms of cocaine and 12 kilograms of heroin. *Id.* ¶ 22. One of the cars, a red Honda Odyssey, belonged to Gonzalez. *Id.* ¶ 26. Law enforcement agents surveilled the two cars, stopped them, and arrested the four co-conspirators. *Id.* Inside Gonzalez' car, agents found two semiautomatic pistols with defaced serial numbers. *Id.* Gonzalez and his co-conspirators were dressed in black sweatshirts. *Id.* After arresting Gonzalez, agents searched him and found a pair of latex gloves and handwritten instructions given him by the cooperating witness to find the drugs in the purported victims' car. *Id.*

On October 21, 2013, a grand jury in the Southern District of New York returned Superseding Indictment 13 Cr. 823 (ER) ("the Indictment") charging Gonzalez and his co-conspirators with conspiring to distribute and possess with intent to distribute narcotics in violation of 21 U.S.C. § 841(a)(1) (Count One); with conspiring to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count Two); and with using, carrying, and possessing firearms in connection with "the narcotics conspiracy charged in Count One . . . [and] the robbery conspiracy charged in Count Two . . ." in violation of 18 U.S.C. § 924(c)(1)(A)(i) and (2) (Count Three). Indictment ¶¶ 1-5, Doc. 6.

On May 15, 2015, Gonzalez pled guilty before this Court to Counts Two and Three. Before the hearing, on May 12, 2015, Gonzalez and his counsel signed a plea agreement with the Government that described Count Three as follows:

> Count Three . . . charges the defendant with carrying and possessing a firearm, and aiding and abetting the possession and carrying of a firearm, in connection with the robbery conspiracy charged in Count Two, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(i) and 2.

Plea Agreement ("Plea Agreement") at 1. In consideration of Gonzalez' plea, the Government agreed to move to dismiss Count One, the narcotics conspiracy count. *Id.* at 2. At the plea hearing, the Court described Counts Two and Three as follows, without including the narcotics conspiracy as a predicate offense for Count Three:

> THE COURT: Do you understand that you are charged in Count Two of that indictment with participating in a conspiracy to commit a robbery?
>
> THE DEFENDANT: Yes.
>
> THE COURT: You are charged in Count Three of that indictment with carrying and possessing a firearm in connection with that conspiracy.
>
> THE DEFENDANT: Yes.

Transcript of Plea Allocution of Anibal Gonzalez ("Plea Tr.") 8:23–9:5, 13 Cr. 823 (ER), Doc. 83. The Court then asked the Government to summarize the elements of Counts Two and Three. In summarizing Count Three, the Government indicated that either the narcotics conspiracy or the robbery conspiracy might serve as the requisite predicate offense:

> There are two elements . . . [f]irst, that the defendant committed a crime of violence or a drug trafficking crime for which he might be prosecuted in a court of the United States, namely, the narcotics conspiracy charged in Count One of the Indictment or the Hobbs Act robbery conspiracy charged in Count Two of the indictment; and [s]econd, that the defendant knowingly used or carried a firearm during and in relation to the commission of or knowingly possessed a firearm in furtherance of that crime of violence or drug trafficking crime.

*Id.* at 9:19–10:5. The Government then stated that it expected to prove at trial that Gonzalez and his co-defendants conspired to rob several kilograms of narcotics from the drug dealers, and that Gonzalez possessed a firearm during this conspiracy:

> If this case were to proceed to trial, the government would prove beyond a reasonable doubt . . . that . . . the defendant agreed with others to commit a robbery of individuals in a car being driven to New York from Miami that contained 33 kilograms of cocaine and 12 kilograms of heroin. Also, that the defendant carried, possessed, and aided and abetted in the carrying and possession of two firearms in connection with the narcotics conspiracy and the robbery that I just described. Those firearms were a loaded .40 caliber H&K semiautomatic pistol with a defaced serial number and a loaded .380 Hi-Point semiautomatic pistol with a defaced serial number.

*Id.* at 20:9–21:5. Finally, Gonzalez himself stated:

3

> In the fall of 2013, Jose Arias asked me if I would go along with him and others to rob drug dealers. I agreed to go along. I knew that the plan involved the use of guns. We ultimately decided not to go through with the plan and were arrested when we were leaving. I am sorry about what happened.

*Id.* at 21:23–22:3.

Based on these representations, the Government and Gonzalez' counsel agreed there was an adequate factual basis to support Gonzalez' guilty plea, and Gonzalez' counsel stated he knew of no valid defense that would prevail at trial, nor of any other reason why Gonzalez should not plead guilty. *Id.* at 23:11–20. Gonzalez affirmed that he was in fact guilty and was pleading guilty voluntarily and of his own free will. *Id.* at 23:2–7. The Court then accepted Gonzalez' guilty plea to Counts Two and Three. *Id.* at 23:21–24:1. Prior to accepting Gonzalez' guilty plea, the Court informed Gonzalez, a citizen of the Dominican Republic and permanent resident of the United States, that there could be adverse immigration consequences a result of his plea, including deportation; that adverse immigration consequences could not be a basis to withdraw his plea, appeal, or otherwise challenge his conviction; that there was a "strong possibility" he would be deported after serving his sentence; and that if he were deported, returning to the United States during his period of supervised release without the permission of the Secretary of Homeland Security would be a separate crime. *Id.* at 13:18–15:4. Gonzalez affirmed that he understood he was likely to be deported as a result of his guilty plea. *Id.* at 14:5–8.

At the sentencing hearing on August 25, 2015, the Court considered the PSR, dated August 4, 2015, prepared by the United States Probation Department, as well as the sentencing submissions prepared by the Government and by Gonzalez' counsel. Transcript of Sentencing Hearing of Anibal Gonzalez ("Sentencing Tr.") 2:15–3:4, 13 Cr. 823 (ER), Doc. 103. The PSR described the offense conduct for which Gonzalez would be sentenced. Gonzalez and his counsel confirmed that they had both reviewed and discussed the PSR, and neither objected to its factual accuracy. *Id.* at 3:8–16.

The Court imposed a sentence of 60 months and one day. *Id.* at 19:10–14. The Court noted that the sentence was appropriate because "this was an extraordinarily serious offense. Although it was a reverse sting with no actual drugs involved, there were very real guns that were involved, and it created an extraordinarily dangerous situation." *Id*. at 17:7–11. At the sentencing hearing, Gonzalez' counsel affirmed again that Gonzalez was "likely to face deportation" as a result of his conviction. *Id*. at 8:7–8. On August 27, 2015, the Court entered judgment, adjudicating Gonzalez guilty of one count of conspiracy to commit Hobbs Act robbery, for which he was sentenced to one day's imprisonment, and one count of using or possessing a firearm during a crime of violence, for which he was sentenced to 60 months' imprisonment. Judgment at 1-2, 13 Cr. 823 (ER), Doc. 100. The Court dismissed Count One. Gonzalez did not appeal.

On May 10, 2016, Gonzalez filed a *pro se* motion under 28 U.S.C. § 2255 to vacate his § 924(c) conviction, pursuant to the Supreme Court's decision in *Johnson v. United States*, 576 U.S. 591 (2015) (holding the residual clause of the Armed Career Criminal Act defining "violent felony" to mean an offense that presents a serious risk of physical injury to another to be void for vagueness). On June 1, 2016, the Court appointed the Federal Defenders as habeas counsel. 13 Cr. 823 (ER), Doc. 110. On August 30, 2016, upon joint request by Gonzalez' counsel and the Government, the Court stayed the case pending resolution of the ongoing Second Circuit case *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019). 13 Cr. 823 (ER), Doc. 111.

On March 28, 2018, an Immigration Judge ordered Gonzalez removed, based on his conviction for an aggravated felony under the Immigration and Nationality Act. He was removed to the Dominican Republic on April 17, 2018. United States of America v. Rafael Martinez-Liz, a/k/a Anibal González, Complaint ("District of Puerto Rico Complaint") ¶ 8, 19 Cr. 593 (ADC), Doc. 1 (accent marks in original). On or about September 8, 2019, Customs and Border Protection apprehended Gonzalez at the Luis Muñoz-

Marín International Airport in Carolina, Puerto Rico, attempting to board a flight to New York.  *Id*. ¶¶ 1-2.  He had a Dominican passport bearing the name Rafael Martinez-Liz. *Id*. ¶ 3.  Gonzalez admitted that he had entered the United States in about June 2019 without being inspected or admitted.  *Id*. ¶ 9.  According to the sentencing memorandum prepared by Gonzalez' counsel, he fled the Dominican Republic fearing for his life after he faced threats for investigating the killing of his eldest son.[1]  Sentencing Memorandum at 2, 19 Cr. 593 (ADC), Doc. 53.  Gonzalez was charged with one count of re-entry to the United States subsequent to aggravated felony conviction, in violation of 8 U.S.C. § 1326(b)(2).[2]  District of Puerto Rico Complaint at 1.

On August 30, 2019, following *United States v. Davis*, 139 S. Ct. 2319 (2019), the Second Circuit held that conspiracy to commit Hobbs Act robbery is not categorically a crime of violence and therefore may not be a predicate offense to sustain a § 924(c) conviction.  *Barrett*, 937 F.3d at 127.  On April 1, 2020, the Court directed Gonzalez' counsel and the Government to submit a status report regarding Gonzalez' motion to vacate in light of *Barrett*.  Gonzalez' counsel thereafter filed an amended motion to vacate. Motion to Vacate ("Mot'n to Vacate"), 13 Cr. 823 (ER), Doc. 125.  Meanwhile,

---

[1] In their sentencing submission to this Court, Gonzalez' counsel explained that Gonzalez' eldest son had been shot and killed in the Dominican Republic in 2011, at the age of 24, less than two years before the offenses for which Gonzalez was convicted.  Sentencing Memorandum of Anibal Gonzalez at 7, 13 Cr 823 (ER), Doc. 96.  Gonzalez explained that his grief and other personal stressors had affected his judgment at the time.  The Court took Gonzalez' personal history, characteristics, and family ties into account when imposing sentence.

[2] In April 2018, the Supreme Court held 18 U.S.C. § 16(b), the residual clause of the federal criminal code defining "crime of violence," and incorporated by the Immigration and Nationality Act as one of a list of aggravated felonies enumerated at 8 U.S.C. § 1101(a)(43), to be unconstitutionally void for vagueness. *Sessions v. Dimaya*, 138 S. Ct. 1204, 1215 (2018).  Under *Dimaya*, Gonzalez' conviction for conspiracy to commit Hobbs Act robbery is not a crime of violence aggravated felony, just as it is not a valid predicate offense to sustain a § 924(c) conviction.  Gonzalez was ordered removed before *Dimaya* was decided. Gonzalez' defense counsel in his case before the District of Puerto Rico did not argue that he had not in fact been convicted of an aggravated felony nor move to dismiss the 8 U.S.C. § 1326(b)(2) indictment.  *Cf. United States v. Palomar-Santiago*, 813 F. App'x 282, 284 (9th Cir. 2020), *cert. granted*, 141 S. Ct. 975 (2021).

Gonzalez' prosecution in the District of Puerto Rico was ongoing. On September 15, 2020, Gonzalez signed a plea agreement with the Government, and on November 10, 2020, Judge Aida M. Delgado-Colón of the U.S. District Court for the District of Puerto Rico sentenced him to 15 months' imprisonment and three years of supervised release. Judgment at 1, 19 Cr. 593 (ADC), Doc. 39. According to the Bureau of Prisons Inmate Locator, Gonzalez (under the name Rafeal Martinez-Liz) was released on March 3, 2021.[3]

## II. DISCUSSION

Section 924(c)(1)(A) forbids using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime." In *Barrett*, the Second Circuit held that conspiracy to commit Hobbs Act robbery is not a crime of violence and thus cannot be a predicate offense for a § 924(c) charge. *See* 937 F.3d at 130 (applying *United States v. Davis*, 139 S. Ct. 2319 (2019)). Therefore, Gonzalez' sentence under § 924(c) may stand only if it was also predicated on a drug trafficking crime, which is defined as a "felony punishable under the Controlled Substances Act (21 U.S.C. 801 *et seq.*). . ." § 924(c)(2).

Under the procedural default rule, a defendant may not collaterally challenge a conviction that he has not directly appealed unless he can show either "(1) cause for the failure to bring a direct appeal and actual prejudice from the alleged violations; or (2) actual innocence." *Zhang v. United States*, 506 F.3d 162, 166 (2d Cir. 2007); *see also Bousley v. United States*, 523 U.S. 614, 622 (1998).

Gonzalez argues that his § 924(c) conviction should be vacated in light of *Barrett* and *Davis*, because his conviction for § 924(c) was predicated solely on his conviction for Count Two, conspiracy to commit Hobbs Act robbery, which is no longer a valid predicate crime of violence. Gonzalez argues that the facts to which he admitted at his plea hearing do not support a conviction for a narcotics conspiracy, and that he pled only

---

[3] Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed May 14, 2021).

to conspiracy to commit Hobbs Act robbery as the predicate offense. Mot'n to Vacate at 4; Reply Memorandum of Law at 3-4, 13 Cr. 823 (ER), Doc. 129. The Government's summary of the elements of § 924(c) described the predicate offenses in the alternative, as either a crime of violence or a drug trafficking crime. Furthermore, Gonzalez argues, the Government's offer of proof at the plea hearing supported only an agreement to rob the drug dealers of 45 kilograms of narcotics, not an agreement to distribute them or possess them with intent to distribute. Mot'n to Vacate at 3. The Government responds that Gonzalez' motion must be denied because he has procedurally defaulted his challenge to his § 924(c) conviction and he cannot show cause for failure to bring a direct appeal following *Johnson*, which was decided before the Court entered judgment. Government's Memorandum in Opposition at 13-16, 13 Cr. 823 (ER), Doc. 126. The Government further argues that the record provides support for the underlying narcotics trafficking conspiracy as an alternate predicate act for Gonzalez' § 924(c) conviction.[4] *Id.* at 17-26.

Pursuant to the Second Circuit's decision in *United States v. Dussard*, 967 F.3d 149 (2d Cir. 2020), the Court finds that the charged narcotics conspiracy provides a sufficient alternate predicate for the § 924(c) sentence and that Gonzalez' motion for relief must be denied. Regardless of whether Gonzalez and his original counsel should have foreseen the result in the *Johnson/Davis/Barrett* line of cases holding that the residual clause of § 924(c) is void for vagueness and therefore that conspiracy to commit Hobbs Act Robbery is not a valid predicate for § 924(c) conviction, Gonzalez' motion is procedurally barred because he cannot show actual prejudice from the alleged error.

The facts of Gonzalez' case are similar to those in *Dussard*. In *Dussard*, the Second Circuit affirmed the defendant's § 924(c) conviction finding that, while the § 924(c)

---

[4] Gonzalez' plea agreement included a provision that Gonzalez would not appeal or collaterally challenge his conviction, including through bringing a motion under 28 U.S.C. § 2255, if the sentence imposed was within or below the U.S. Sentencing Guidelines range. Plea Agreement at 5. Although the Court imposed a sentence well below the Guidelines range, the Government does not rely upon the appeal or collateral challenge waiver in its opposition to Gonzalez' petition.

8

conviction based on conspiracy to commit Hobbs Act robbery as a predicate act was error following *Barrett*, that error did not affect the defendant's substantial rights. 967 F. 3d at 151. Dussard, like Gonzalez, was charged with three counts: conspiracy to commit Hobbs Act robbery, a narcotics conspiracy, and the use, carrying, and possession of a firearm in relation to both predicate offenses. *Id.* at 152; Indictment ¶ 5.

Dussard entered into a plea agreement with the Government and pled guilty to Counts One and Three, conspiracy to commit Hobbs Act robbery and using and carrying a firearm during and in relation to a crime of violence. 967 F. 3d at 153. At his plea hearing, Dussard admitted,

> On approximately August 2016 to September 8, 2016, I conspired with individuals who possessed firearms in order to steal narcotics at gun point from people we believed were drug dealers transporting narcotics. At the time I committed the offense I knew what I was doing was wrong.

*Id*. The court sentenced Dussard and entered judgment, which erroneously stated that he was convicted of Count Three for "possession of a firearm in furtherance of narcotics conspiracy." *Id*. Dussard timely appealed and supplemented his pending appeal in light of *Davis* and *Barrett*.

The Second Circuit found that Dussard's conviction on Count Three based on conspiracy to commit Hobbs Act robbery was error, but that the error had not affected Dussard's substantial rights, despite the fact that neither the plea agreement nor the plea hearing had referred to the drug trafficking conspiracy as either the predicate, or an alternate predicate, for Count Three. *Id.* at 156. The Second Circuit reasoned that the § 924(c) conviction could stand because,

> the evidence . . . provided an ample predicate for a conviction under § 924(c)(1)(A)(i) on the basis of firearm possession during and in relation to a drug trafficking crime. It included Dussard's sworn admission that he knowingly participated in a conspiracy "to steal narcotics at gun point from people we believed were drug dealers transporting narcotics" (Plea Tr. 13); and Dussard did not contest the PSR descriptions of meetings he attended with other coconspirators at which (a) it was discussed that the targeted drug dealers would be transporting 12 kilograms of cocaine—a quantity inconsistent with any notion that the

9

> coconspirators intended to steal the drugs for their own personal use—and (b) a coconspirator stated that he already had buyers lined up for the cocaine they would steal.
>
> Thus, if Dussard and the government had anticipated the *Davis* decision making the predication of Count Three on the Hobbs Act conspiracy invalid, they could have avoided the invalidity in Dussard's Count Three plea of guilty just by changing the two lines of the Agreement's Count Three description that referred to a crime of violence and Hobbs Act conspiracy, to have that description refer instead to the allegation of firearm possession "during and in relation to a drug trafficking crime . . ., namely, the narcotics conspiracy charged in Count Two of this indictment…"

*Id.* at 157-58. Considering the record as a whole, the Second Circuit concluded that Dussard "would have little genuine hope of being acquitted of the Count Two drug trafficking conspiracy after a trial." *Id*. at 157. The Second Circuit also remarked that "nothing about [Dussard's] plea or the plea hearing itself provides any basis for an argument that he was willing to plead guilty to Count Three only if it was tied to the charge of Hobbs Act conspiracy" rather than the narcotics conspiracy predicate. *Id.* at 158.

The record as a whole in Gonzalez' case likewise supports the narcotics conspiracy as an adequate predicate for Count Three. At his plea hearing, he admitted that the object of the conspiracy was to "rob drug dealers" and that he knew the conspiracy involved the use of guns. Plea Tr. 21:23–22:1. The PSR, to which neither Gonzalez nor his counsel objected, stated that the co-conspirators planned to steal 33 kilograms of cocaine and 12 kilograms of heroin. PSR ¶ 22. The cooperating witness had given Gonzalez handwritten instructions to open the compartment in the drug dealers' car where the drugs were kept. *Id*. Like Dussard, Gonzalez "would have little genuine hope" of prevailing on the narcotics trafficking charge, and indeed his counsel admitted that he knew of no valid defenses that would prevail at trial. Plea Tr. 23:11–14. And like Dussard, nothing about Gonzalez' plea or plea hearing "provides any basis for an argument that he was willing to plead guilty to Count Three only if it was tied to the charge of Hobbs Act conspiracy." 967 F.3d at 158. Furthermore, Gonzalez, who faced a mandatory minimum of ten years' imprisonment if convicted of Count One based on the quantity of heroin and

cocaine at issue, 21 U.S.C. § 841(b)(1)(A)(i)-(ii), has not provided any evidence that he would not have taken the plea had the predicate offense for the § 924(c) charge been the drug trafficking conspiracy rather than the Hobbs Act robbery conspiracy. *Id.* at 154. Gonzalez, therefore, cannot show that he suffered actual prejudice as a result of his § 924(c) conviction based on Count Two.

Nor has Gonzalez demonstrated that he is actually innocent. In his motion, Gonzalez does not argue that he is actually innocent of the narcotics trafficking conspiracy, only that he did not allocute to it and was not convicted of it. "The plain language of § 924(c) requires only that the predicate crime of violence (or drug trafficking) have been committed," not that "the defendant must be separately charged with that predicate crime and be convicted of it." *Johnson v. United States*, 779 F.3d 125, 129-130 (2d Cir. 2015). The record as a whole provides sufficient evidence of the predicate narcotics conspiracy. Gonzalez' plea agreement specifically states that, under the Sentencing Guidelines, one offense level is added "because the taking of a controlled substance was an object of the offense." Plea Agreement at 4. In its proffer, the Government explained that it would expect to prove at trial that Gonzalez and his co-conspirators conspired to rob over 40 kilograms of narcotics. Finally, the PSR, which Gonzalez and his counsel did not dispute, provides further support that the object of the conspiracy was to steal many kilograms of narcotics and that the co-conspirators used, possessed, and carried firearms in relation to the narcotics conspiracy. PSR ¶ 22.

For the same reasons that Gonzalez is unable to show he is actually innocent, there is "legally sufficient proof" of the narcotics conspiracy. *Johnson*, 779 F. 3d at 129. At his plea hearing, Gonzalez admitted to conspiring to rob drug dealers and that the plan would involve the use of guns. Contrary to Gonzalez' contention that the Government's offer of proof did not include proof of an agreement to distribute narcotics, the quantity of narcotics at issue is more than sufficient to support a drug trafficking conspiracy as a predicate offense. *See, e.g.*, *DeJesus v. United States*, 14 Cr. 83 (ER), 2020 WL 9048726,

at *3 (S.D.N.Y. May 4, 2020) (conspiracy to rob nearly 30 kilograms of heroin and cocaine sufficient to support narcotics trafficking as predicate offense for § 924(c) conviction).

### III. CONCLUSION

For the foregoing reasons, Gonzalez' motion is DENIED. The Clerk of Court is respectfully directed to terminate the motion, Doc. 105 in 13 Cr. 823 (ER), and to close the civil case, 16 Civ. 3481 (ER).

It is SO ORDERED.

Dated: May 19, 2021
       New York, New York

                                            Edgardo Ramos, U.S.D.J.